1   JORDAN ETH (BAR NO. 121617)                    DORIAN DALEY (BAR NO. 129049)
    jeth@mofo.com                                  dorian.daley@oracle.com
2   PHILIP T. BESIROF (BAR NO. 185053)             DEBORAH K. MILLER (BAR NO. 95527)
    pbesirof@mofo.com                              deborah.miller@oracle.com
3   MORRISON & FOERSTER LLP                        JAMES C. MAROULIS (BAR NO. 208316)
    425 Market Street                              jim.maroulis@oracle.com
4   San Francisco, California 94105-2482           ORACLE CORPORATION
    Telephone: (415) 268-7000                      500 Oracle Parkway
5   Facsimile: (415) 268-7522                      Redwood Shores, California 94065
                                                   Telephone: (650) 506-5200
6   Attorneys for Defendants                       Facsimile: (650) 506-7114
    JEFFREY S. BERG, H. RAYMOND BINGHAM,
7   MICHAEL J. BOSKIN, SAFRA CATZ,                 Attorneys for Defendant
    GEORGE H. CONRADES, LAWRENCE J.                ORACLE CORPORATION
8   ELLISON, KEVIN J. FITZGERALD, HECTOR
    GARCIA-MOLINA, JEFFREY O. HENLEY,
9   DONALD L. LUCAS, CHARLES E. PHILLIPS,
    JR., NAOMI O. SELIGMAN, and ORACLE
10  CORPORATION

11  [Additional counsel appear on signature page]

12                  **UNITED STATES DISTRICT COURT**

13                 **NORTHERN DISTRICT OF CALIFORNIA**

14                    **SAN FRANCISCO DIVISION**

15  In re ORACLE CORPORATION DERIVATIVE        | **Master File No. C-10-03392-RS;**
    LITIGATION                                 | **Case No. C-11-04493-RS**
16
                                               | **STIPULATION OF SETTLEMENT**
17  _____

18  SCOTT OZAKI, derivatively and on behalf of
    ORACLE CORPORATION,
19                                               Judge:  Hon. Richard Seeborg
                            Plaintiff,           Ctrm:  3, 17th Floor
20          v.

21  LAWRENCE J. ELLISON, SAFRA A. CATZ,          Mediator:  Hon. Dickran M. Tevrizian
    JEFFREY O. HENLEY, MICHAEL J. BOSKIN,        (Ret.)
22  H. RAYMOND BINGHAM, DONALD L.
    LUCAS, JEFFREY S. BERG, BRUCE R.
23  CHIZEN, HECTOR GARCIA-MOLINA, NAOMI
    O. SELIGMAN, and GEORGE H. CONRADES,
24
                            Defendants,
25     -and-

26  ORACLE CORPORATION, a Delaware
    Corporation,
27
                            Nominal Defendant.
28

This Stipulation of Settlement ("Stipulation"), dated May 22, 2013, is made and entered into among the following Settling Parties and their counsel of record:  (i) Derivative Plaintiffs (as defined below), on behalf of themselves and derivatively on behalf of Oracle Corporation ("Oracle" or the "Company") in connection with *In re Oracle Corporation Derivative Litigation*, Master File No. C-10-03392-RS, and *Ozaki v. Ellison*, *et al.*, Case No. C-11-04493-RS, both pending before the Honorable Richard Seeborg of the United States District Court for the Northern District of California (the "Derivative Actions"); (ii) the Individual Defendants (as defined below); and (iii) Oracle (collectively, the "Settling Parties").

The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to all of the following terms and conditions and the Court's approval of the Stipulation.

## I.   SUMMARY OF THE LITIGATION

### A.   Procedural Overview

#### (i)   The Consolidated Action

On August 2, 2010, Plaintiff Lisa Galaviz filed a derivative complaint in the United States District Court for the Northern District of California against Oracle (as a nominal defendant) and certain of Oracle's current and former officers and directors.  On August 19, 2010, Plaintiff Philip T. Prince filed a similar derivative complaint in the San Mateo Superior Court, which Defendants removed to this Court.  On February 8, 2011, the actions brought by Ms. Galaviz and Mr. Prince were ordered consolidated for all purposes (the "Consolidated Action").  On February 10, 2011, plaintiffs in the Consolidated Action filed a consolidated complaint alleging the following claims for relief:  breach of fiduciary duty; abuse of control; and unjust enrichment based on alleged violations of the False Claims Act by Oracle.  Plaintiffs allege that the Individual Defendants (defined below) authorized Oracle employees to overcharge the U.S. federal government by failing to offer discounts relative to those given to other customers.

On March 31, 2011, Oracle filed a motion to dismiss the Consolidated Action on the ground that plaintiffs had failed to plead particularized facts demonstrating that they were excused from making a demand upon Oracle's Board of Directors to act on their allegations,

1

1  which was heard on June 2, 2011.  The Individual Defendants in the Consolidated Action also

2  moved to dismiss the Consolidated Action for failure to state a claim.

3       On September 12, 2011, plaintiffs in the Consolidated Action filed a petition for a writ of

4  mandate in the California Superior Court for the County of San Mateo.  The petition sought an

5  order under California Corporations Code Section 1601 compelling Oracle to allow inspection of

6  12 categories of documents (the "Section 1601 Action").  The stated purposes of the petition were

7  to assist plaintiffs in the Consolidated Action in pleading demand futility, and to assist them in

8  investigating the allegations pled in that action.

9       On November 9, 2011, this Court issued an order granting Oracle's motion to dismiss the

10  Consolidated Action with leave to amend.  The order held that, to demonstrate that demand would

11  have been futile, any amended complaint would have to plead particularized facts showing that

12  "the [Oracle] directors knew of, or recklessly disregarded" information showing that "Oracle was

13  engaged in the alleged wrongdoing."  This Court also dismissed the Consolidated Action with

14  leave to amend on the independent ground that plaintiffs had failed to allege with sufficient

15  specificity that they had been Oracle shareholders at the time of the alleged wrongful acts and that

16  they retained ownership for the duration of the lawsuit.

17       The Consolidated Action has been stayed pending settlement negotiations pursuant to the

18  parties' stipulation.

19       On December 12, 2011, the trial court in the Section 1601 Action entered final judgment

20  allowing the document inspection sought by the plaintiffs in the Consolidated Action.  Oracle has

21  appealed that judgment and filed its opening brief on December 28, 2012.  No hearing date has

22  been scheduled.

23          **(ii)**    **The Ozaki Action**

24       On January 12, 2011, counsel for Plaintiff Scott Ozaki sent a shareholder litigation

25  demand letter to Oracle's Board (the "Litigation Demand"), requesting the Board to investigate,

26  address, remedy, and commence proceedings against any persons involved in the alleged FCA

27  violations.  After months of correspondence with Oracle's counsel concerning the Litigation

28  Demand, Plaintiff Scott Ozaki filed a derivative action (the "Ozaki Action") in the United States

2

1    District Court for the Northern District of California against some of the same defendants named

2    in the Consolidated Action on September 8, 2011.  Mr. Ozaki's complaint asserted the following

3    claims for relief:   breach of fiduciary duty; waste of corporate assets; and unjust enrichment

4    arising from allegations similar to those in the Consolidated Action.

5          On April 9, 2012, the Ozaki Action was stayed pursuant to the parties' stipulation pending

6    settlement negotiations.

7                    **(iii)    The Dismissed Delaware Action**

8          On March 22, 2011, Plaintiff Jordan Weinrib filed a derivative action in the Court of

9    Chancery for the State of Delaware, captioned *Weinrib v. Ellison, et al.*, Case No. 7350 (Del. Ch.)

10   (the "Delaware Action").   Mr. Weinrib alleged claims for breach of fiduciary duty based on

11   allegations similar to those in the Consolidated Action.  Mr. Weinrib voluntarily dismissed his

12   complaint without prejudice in April 2012, and the Delaware Action is no longer pending.

13      **B.    Settlement Negotiations**

14         The parties in the Consolidated Action and the Ozaki Action have agreed to stay those

15   actions to facilitate settlement discussions.  The settlement discussions began with a formal in-

16   person mediation session on June 5, 2012, supervised by the Hon. Dickran M. Tevrizian (U.S.

17   Dist. Judge, Ret.).  Prior to the mediation, all parties briefed and submitted mediation statements.

18   At the mediation, with the assistance of the mediator, the parties had extensive, face-to-face

19   discussions concerning corporate governance reforms that could form the basis for a settlement.

20   The parties agreed that Defendants' counsel would hold discussions with Oracle and the Board,

21   and then propose corporate governance provisions to address the issues discussed at the

22   mediation.   Between June 2012 and December 2012, the parties continued their settlement

23   discussions, including further telephonic conferences with Judge Tevrizian and face-to-face and

24   telephonic meetings between counsel.

25         Substantially in response to those discussions, and as set forth in further detail below,

26   Oracle has agreed to institute or maintain corporate governance provisions governing its internal

27   controls and systems regarding compliance with the False Claims Act and with regulations

28   promulgated by the General Services Administration regarding pricing for software licensed and

3

services provided to government agencies. After negotiating and reaching agreement on the corporate governance provisions, the parties then subsequently began negotiations about the payment of Derivative Plaintiffs' Counsel's fees and reimbursement of expenses. After discussions with counsel, Judge Tevrizian proposed that, subject to Court approval, fees and expenses up to the aggregate amount of $1,900,000 be paid to Plaintiffs' counsel. The parties accepted this proposal.

The Settling Parties believe that a settlement at this juncture on the terms and conditions set forth herein is fair, reasonable, adequate, and in the best interests of Oracle and its shareholders.

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants (as defined below) have denied and continue to deny each and all of the claims and contentions alleged by Derivative Plaintiffs in the Derivative Actions. Oracle expressly has denied and continues to deny all allegations that it violated the False Claims Act and believes the decision to pursue this litigation belongs to its Board of Directors. The Individual Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them or any of them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Derivative Actions. Defendants also have denied and continue to deny, among other things, the allegations that Oracle has suffered damage or that Oracle was harmed by any of the conduct alleged in the Derivative Actions. The Individual Defendants have further asserted that at all relevant times they acted in good faith and in a manner that was in fact, and that they reasonably believed to be, in the best interests of Oracle and the Current Oracle Shareholders (as defined below).

Nonetheless, Defendants (including Oracle) have concluded that continuation of the Derivative Actions would be protracted, expensive, potentially risky, and distracting. Defendants are entering into the Stipulation because it will eliminate the burden, expense, and risk inherent in any litigation and especially in complex cases like the Derivative Actions. Defendants have, therefore, determined that it is desirable and in Oracle's best interests that the Derivative Actions be settled in the manner and upon the terms and conditions set forth in the Stipulation.

4

### III.    CLAIMS OF THE DERIVATIVE PLAINTIFFS AND BENEFITS OF SETTLEMENT

Derivative Plaintiffs believe that the claims asserted in the Derivative Actions have merit, and Derivative Plaintiffs' entry into the Stipulation and Settlement is not intended to be and shall not be construed as an admission or concession concerning the relative strength or merit of the claims alleged in the Derivative Actions.  Derivative Plaintiffs' Counsel (as defined below) recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Derivative Actions on behalf of Oracle and against the Individual Defendants through trial and appeal.  Derivative Plaintiffs' Counsel also have taken into account the uncertain outcome and the potential risk of any litigation, especially in complex actions such as the Derivative Actions, as well as the difficulties and delays inherent in such litigation.  Derivative Plaintiffs' Counsel also are mindful of the inherent problems of proof of, and possible defenses to, the claims for relief asserted in the Derivative Actions.  Based on their own evaluations, and the evaluation of their counsel, Derivative Plaintiffs believe that the settlement set forth in the Stipulation confers substantial benefits upon, and is in the best interests of, the Derivative Plaintiffs, Oracle, and Current Oracle Shareholders.

### IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Derivative Plaintiffs (on behalf of themselves and derivatively on behalf of Oracle) and the Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Derivative Actions and the Released Claims shall be finally and fully compromised, settled, and released, and the Derivative Actions shall be dismissed with prejudice as to all Defendants, upon and subject to all the terms and conditions of the Stipulation.

**1.     Definitions**

As used in the Stipulation, the following terms have the meanings specified below:

1.1     "Court" means the United States District Court for the Northern District of California.

1.2 "Current Oracle Shareholders" means any Person who owns Oracle common stock up to the date of entry of the Judgment.

1.3 "Defendants" means nominal defendant Oracle and the Individual Defendants.

1.4 "Derivative Plaintiffs" means Lisa Galaviz, Philip T. Prince, Scott Ozaki, and Jordan Weinrib.

1.5 "Derivative Plaintiffs' Counsel" means Joseph W. Cotchett, Nancy L. Fineman, and Mark C. Molumphy, Cotchett, Pitre & McCarthy, LLP, San Francisco Airport Office Center, 840 Malcolm Road, Ste. 200, Burlingame, CA 94010, Telephone: (650) 697-6000 ("Cotchett"); Jerry K. Cimmet, Attorney at Law, 177 Bovet Road, Ste. 600, San Mateo, CA 94402, Telephone: (650) 866-4700 ("Cimmet"); John M. Kelson, Law Offices of John M. Kelson, 2000 Powell Street, Ste. 1425, Emeryville, CA 94608, Telephone: (510) 465-1326 ("Kelson"); Brian J. Robbins and Kevin A. Seely, Robbins Arroyo LLP, 600 B Street, Suite 1900, San Diego, CA 92101, Telephone: (619) 525-3990; Laurence D. Paskowitz, The Paskowitz Law Firm P.C., 60 East 42nd Street, 46th Floor, New York, NY 10165, Telephone: (212) 685-0969; and Roy L. Jacobs, Roy Jacobs & Associates, 60 East 42nd Street, Suite 4600, New York, NY 10165, Telephone: (212) 867-1156. "Derivative Lead Counsel" means the firms appointed by Judge Seeborg to serve as co-lead counsel in *In re Oracle Corporation Derivative Litigation*: Cotchett, Cimmet, and Kelson.

1.6 "Effective Date" means the first date by which all of the following events and conditions shall have been, and remain, satisfied:

(a) the Stipulation has been executed;

(b) the payment of the Fee and Expense Amount in accordance with paragraph 6;

(c) the Court has entered the Judgment (as defined below) substantially in the form of Exhibit A attached hereto;

(d) the Judgment has become Final; and

6

1  (e)  the trial court's judgment in the Section 1601 Action (as defined

2  below) has been vacated.

3  1.7  "Family Member" means spouses, parents, children, siblings, mothers-in-

4  law, fathers-in-law, brothers-in-law, sisters-in-law, sons-in-law, daughters-in-law, and anyone

5  who resides in a Defendant's home.

6  1.8  "Fee and Expense Amount" means (1) Derivative Plaintiffs' Counsel's

7  attorneys' fees, expenses, and costs, with interest thereon, as described in Paragraph 6.

8  1.9  "Final" means the latest of the following dates:  (a) the date of final

9  affirmance on any appeal of the Judgment, the expiration of the time for a petition for or a denial

10  of a writ of certiorari to review the Judgment and, if certiorari is granted, the date of final

11  affirmance of the Judgment following review pursuant to that grant; or (b) the date of final

12  dismissal of any appeal from the Judgment or the final dismissal of any proceeding on certiorari

13  to review the Judgment; or (c) if no appeal is filed from the Judgment, the expiration date of the

14  applicable time for the filing or noticing of any appeal from such Judgment(s).  Any proceeding

15  or order, or any appeal or petition for review, pertaining solely to any application for or award of

16  attorneys' fees or expenses, including but not limited to the Fee and Expense Amount, shall not in

17  any way delay or preclude the Judgment from becoming Final, in all other respects.

18  1.10  "Individual Defendants" means defendants Jeffrey S. Berg, H. Raymond

19  Bingham, Michael J. Boskin, Safra A. Catz, Bruce R. Chizen, George H. Conrades, Lawrence J.

20  Ellison, Hector Garcia-Molina, Jeffrey O. Henley, Donald L. Lucas, Charles E. Phillips, Jr., and

21  Naomi O. Seligman.

22  1.11  "Judgment" means the final judgment to be rendered by the Court in the

23  Derivative Actions, substantially in the form attached hereto as Exhibit A.

24  1.12  "Person" means an individual, corporation, limited liability corporation,

25  professional corporation, partnership, limited liability partnership, limited partnership,

26  association, joint stock company, estate, legal representative, trust, unincorporated association,

27  government or any political subdivision or agency thereof, and any business or legal entity and

28  their spouses, heirs, predecessors, successors, representatives, or assignees.

7

1.13    "Released Claims" means any and all claims (including Unknown Claims and claims brought in the Section 1601 Action, as defined below), rights, and claims for relief, whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, including, without limitation, unknown claims and claims under California or Delaware statutory and common law, federal and state securities laws, and claims under any law governing fiduciaries or the duties of fiduciaries, that have been, could have been, or in the future might be or could be asserted in any form and in any forum derivatively or individually by Oracle shareholders, or by Oracle against the Defendants or any of their Family Members, parent entities, affiliates, or subsidiaries and each and all of their respective past, present, or future officers, directors, employees, attorneys, accountants, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, and assigns that exist, could have existed, or may arise in connection with or that relate to the transactions, or matters, or occurrences, or representations, or omissions involved, set forth, referred to, or which relate in any way to:  (a) the facts or allegations contained in the Derivative Actions (including, but not limited to, breach of any duty owed to Oracle or its shareholders, including the duties of care, loyalty, and good faith); or (b) any allegation that Defendants or related parties improperly defended or settled the Derivative Actions or the Released Claims or both.

1.14    "Released Persons" means the Defendants, and any of their Family Members, parent entities, affiliates, or subsidiaries and each and all of their respective past, present, or future officers, directors, employees, attorneys, accountants, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, and assigns.

1.15    "Section 1601 Action" means the proceedings in *Galaviz et al. v. Oracle Corporation*, Case No. CIV-508326, in the Superior Court for the State of California, County of San Mateo, and related proceedings in the California Court of Appeal.

1.16    "Unknown Claims" means any Released Claims that any Derivative Plaintiff, or Oracle, does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons which, if known by him, her, or it, might have affected his, her, or its settlement with, and release of, the Released Persons.

8

## 2.     Settlement of the Derivative Actions

As part of the settlement, Oracle will continue or will implement the following corporate governance measures, which shall remain in place for three years from the Effective Date. Nothing in this Stipulation shall preclude Oracle from choosing, at its sole discretion, to extend some or all of these measures for a longer period of time.  Oracle agrees that the implementation or continuation of these measures is substantially in response to the efforts of Derivative Plaintiffs' Counsel in the Derivative Actions and the efforts of Derivative Lead Counsel in the Section 1601 Action.  These measures are subject to modification as a result of a change in law or regulations, or as necessary in the good-faith judgment of a unanimous vote or written consent of all of the independent directors of Oracle's Board of Directors (the "Board").

### 2.1     Measures Regarding Oracle's Board or Committees of the Board

**2.1.1**   Oracle's Board, or a Committee of the Board, with the assistance of Oracle's Legal Department, shall at least once annually discuss developments under the federal False Claims Act and the efficacy of the Company's systems and procedures to comply with the False Claims Act, including whether any modifications are necessary or appropriate.

**2.1.2**   Oracle's Board, or a Committee of the Board, with the assistance of Oracle's Legal Department, shall at least once annually review and discuss any applicable "hot-line" reports received, subpoenas served, cases filed, and internal investigations conducted regarding alleged violations of the False Claims Act by Oracle.

**2.1.3**   The Company's Chief Compliance and Ethics Officer, or a member of his or her team, shall at least once annually report to the Board, or a Committee of the Board, on compliance matters and the implementation and monitoring of existing compliance programs. In formulating the agenda for the meeting, the Company's Chief

9

Compliance and Ethics Officer, or a member of his or her team, shall consider addressing the following:

    (a)  Substantive reports related to compliance matters;

    (b)  Matters of implementation of existing compliance programs;

    (c)  Monitoring and adjustment of such programs;

    (d)  The Company's processes for receiving and investigating compliance or ethics-related complaints and any complaints/concerns received;

    (e)  The allocation of resources to the compliance organization; and

    (f)  Compliance-related initiatives.

**2.2    Measures Regarding Training and Education**

**2.2.1**  Oracle shall continue to maintain an ethics and compliance "hot-line" and reporting website to allow employees to report potential violations, including those related to General Services Administration ("GSA") regulations and the False Claims Act. The Company shall take reasonable measures to make the existence of the "hot-line" known to employees.

**2.2.2**  Oracle shall maintain a system of logging, tracking, reporting, and closing investigations arising from the "hot-line" and other complaints.

**2.3    Measures Regarding Future Dealings with the GSA**

Oracle will perform the following tasks to the extent that Oracle America, Inc. ("Oracle America"), including its successors, maintains a current General Services Administration Multiple Award Schedule ("GSA Schedule"), is providing consulting services under orders issued pursuant to the GSA Schedule, or to the extent it enters into any future GSA Schedule.

10

### 2.3.1 Measures Regarding Oracle's Board of Directors or Committees of Oracle's Board of Directors

(a) Oracle's Board of Directors, or a Committee of Oracle's Board of Directors, with the assistance of Oracle's Legal Department, shall at least once annually review and discuss the efficacy of the Company's systems and procedures to comply with applicable GSA regulations for the GSA Schedule, including whether any modifications are necessary or appropriate.

(b) Oracle's Board of Directors, or a Committee of Oracle's Board of Directors, with the assistance of Oracle's Legal Department, shall at least once annually review and discuss any applicable "hot-line" reports received, subpoenas served, cases filed, and internal investigations conducted regarding alleged violations of applicable GSA regulations relating to the GSA Schedule.

### 2.3.2 Measures Regarding Training and Education by Oracle

(a) Oracle shall provide annual training to persons currently in charge of or directly involved in negotiating the GSA Schedule, including employees in Reston, Virginia.

(b) Oracle shall periodically update its training materials for persons currently in charge of or directly involved in negotiating the GSA Schedule, to reflect significant changes in GSA regulations relating to the GSA Schedule and the False Claims Act.

(c) Oracle's employees currently in charge of or directly involved in negotiating the GSA Schedule, including employees in Reston, Virginia, shall be notified in writing at least annually of the Company's systems and processes for reporting concerns regarding ethics and compliance.

11

(d) Oracle's employees currently in charge of or directly involved in negotiating a GSA Schedule, including employees in Reston, Virginia, shall certify annually that they have received training regarding compliance with GSA regulations relating to the GSA Schedule, any applicable price reductions clause ("PRC") regulations, the False Claims Act, and the Company's systems and processes for reporting concerns regarding ethics and compliance. Such certification shall include that employees are aware that violation of Company policies concerning the GSA Schedule or contracts with any other federal agency or entity with which Oracle America is doing business may lead to termination.

**2.3.3 Measures Regarding Oracle's Internal Audit and Legal Department**

(a) Within one year of the final approval of the settlement of the action titled *In re Oracle Corporation Derivative Litigation*, Case No. C-10-03392-RS (N.D. Cal.), Oracle's Legal Department and/or Internal Audit shall conduct a review of Oracle's current policies, practices, and procedures for compliance with applicable GSA regulations relating to the GSA Schedule, and report to Oracle's Board of Directors, or a Committee of Oracle's Board of Directors, on its findings and any recommendations. In formulating the review, Oracle's Legal Department and/or Internal Audit shall consider addressing the following:

i) Oracle's process for obtaining approvals of non-standard discounts;

ii) Oracle's process for tracking contract pricing and discounts;

iii)    Oracle's process for raising questions regarding GSA Schedule terms with the GSA, such that they can be resolved on a timely basis;

iv)    Oracle's process for publishing Oracle promotions and for notifying the GSA about any applicable price changes for the GSA Schedule;

v)    Oracle's process for identifying and notifying the government of errors in quotation or billings; and

vi)    Oracle's process for records retention.

(b)    Any contract entered into by Oracle America with the GSA containing a PRC shall be reviewed and approved by Oracle's Legal Department before execution.

(c)    Oracle's Legal Department and Internal Audit shall, at least annually, hold a meeting to discuss the Company's policies, procedures, and practices regarding compliance with the False Claims Act and applicable GSA regulations relating to the GSA Schedule.

**3.    Court Approval and Settlement Hearing**

3.1    Within a reasonable period not to exceed thirty (30) calendar days after execution of the Stipulation, the Settling Parties' counsel shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Notice Order"), substantially in the form of Exhibit B attached hereto, requesting, among other things:   (a) preliminary approval of the Stipulation; (b) approval of the Notice of Proposed Settlement (the "Derivative Notice"), substantially in the form of Exhibit C and attached hereto, which shall include the general terms of the settlement set forth in the Stipulation, and the date of the Settlement Hearing as defined below; and (c) approval of a plan to provide notice of the settlement to Current Oracle Shareholders by posting the Derivative Notice in the investor relations section of Oracle's website and publishing an abridged Derivative Notice once in the

13

national edition of *Investor's Business Daily*.  Oracle shall be responsible for implementing the proposed plan for providing notice of the settlement to Current Oracle Shareholders and shall pay all costs and expenses incident to providing notice.

    3.2  The Settling Parties shall request that, after the Derivative Notice is given, the Court schedule a hearing (the "Settlement Hearing") to determine whether the Court should: (a) approve the Stipulation as being fair, reasonable, and adequate; and (b) enter the Judgment, substantially in the form of Exhibit A attached hereto, which will include the following provisions, among others:

      (a)  approval of the Stipulation as being fair, reasonable, and adequate;

      (b)  dismissal of the Derivative Actions in their entirety, with prejudice;

      (c)  release of the Released Persons, the Derivative Plaintiffs, and Derivative Plaintiffs' Counsel pursuant to the terms of the Stipulation; and

      (d)  payment of Derivative Counsel's Fee and Expense Amount.

**4.  Releases and Bar**

    4.1  Upon the Effective Date, the Derivative Plaintiffs, Oracle, and each of the Current Oracle Shareholders on behalf of themselves and each of their predecessors, successors, parents, subsidiaries, affiliates, custodians, agents, assigns, representatives, heirs, estates, executors, trusts, trustees, trust beneficiaries, administrators, spouses, marital communities, and immediate family members, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged:  (i) all Released Claims (including all Unknown Claims); and (ii) any and all derivative claims relating to or arising out of or connected with the Stipulation or the resolution of the Derivative Actions, against all of the Released Persons.

    4.2  Upon the Effective Date, the Derivative Plaintiffs, Oracle, and each of the Current Oracle Shareholders on behalf of themselves and each of their predecessors, successors, parents, subsidiaries, affiliates, custodians, agents, assigns, representatives, heirs, estates, executors, trusts, trustees, trust beneficiaries, administrators, spouses, marital communities, and immediate family members, will be forever barred and enjoined from commencing, instituting, or

1   prosecuting any of the Released Claims (including all Unknown Claims), or any action or other

2   proceeding against any of the Released Persons, based on, arising out of, related to, or in

3   connection with, the Released Claims (including all Unknown Claims).

4          4.3     The Derivative Plaintiffs and Oracle further agree that the approval of the

5   Stipulation and the dismissal of the Derivative Actions shall act to bar the prosecution,

6   derivatively on behalf of Oracle, of any claims duplicative of those set forth in, or that could or

7   might have been set forth in, the Derivative Actions, or any claims that contain any portion of the

8   released claims.

9          4.4     Upon the Effective Date, each of the Released Persons shall be deemed to

10  have, and by operation of the Judgment shall have, fully, finally, and forever released,

11  relinquished, and discharged each other, the Derivative Plaintiffs, each and all of the Current

12  Oracle Shareholders, Oracle, and Derivative Plaintiffs' Counsel, from all claims (including all

13  Unknown Claims) relating to or arising out of, or connected with, the institution, prosecution,

14  assertion, settlement, or resolution of the Derivative Actions and/or Released Claims.  Specifically

15  excluded from the releases in this Section 4.4 is any right of Oracle's current and former officers

16  and directors to receive from (or obligation to repay) Oracle indemnification or advancement of

17  legal expenses arising from law and/or statute, Oracle's articles of incorporation and by-laws, any

18  existing agreements, or any resolution (or otherwise) of Oracle's Board of Directors; provided,

19  however, that Oracle shall not seek from its former officers and directors repayment of payments

20  made or defense expenses incurred by them or on their behalf in the Derivative Actions.

21         4.5     With respect to all Released Claims, the Settling Parties stipulate and agree

22  that, upon the Effective Date, the Derivative Plaintiffs, Oracle, and each of the Current Oracle

23  Shareholders shall be deemed to have, and by operation of the Judgment shall have, waived the

24  provisions, rights, and benefits of California Civil Code Section 1542, which provides that "[a]

25  general release does not extend to claims which the creditor does not know or suspect to exist in

26  his favor at the time of executing the release, which if known by him must have materially affected

27  his settlement with the debtor."  The Derivative Plaintiffs, Oracle, and each of the Current Oracle

28  Shareholders shall be deemed to have, and by operation of the Judgment shall have, waived the

15

1   provisions, rights, and benefits conferred by any law of the United States or of any state or

2   territory of the United States, or principle of common law, which is similar, comparable, or

3   equivalent to California Civil Code Section 1542.  The Derivative Plaintiffs, Oracle, and each of

4   the Current Oracle Shareholders may hereafter discover facts in addition to or different from those

5   which he, she, or it now knows or believes to be true with respect to the Released Claims, but each

6   Derivative Plaintiff, Oracle, and each of the Current Oracle Shareholders, upon the Effective Date,

7   shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever

8   settled and released any and all Released Claims, respectively, known or unknown, suspected or

9   unsuspected, contingent or non-contingent, accrued or unaccrued, whether concealed or hidden,

10  which now exist, or heretofore have existed, upon any theory of law or equity now existing or

11  coming into existence in the future, including, but not limited to, conduct which is negligent,

12  intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the

13  subsequent discovery or existence of such different or additional facts.  The Settling Parties shall

14  be deemed by operation of the Judgment to have acknowledged that the foregoing waivers were

15  separately bargained for and are key elements of the settlement of which this release is a part.

16      4.6     Subject to Section 5, pending the Court's determination of whether to

17  approve the Stipulation, all proceedings and all further activity between the Settling Parties

18  regarding or directed toward the Derivative Actions and the Section 1601 Action, and save for

19  those activities and proceedings relating to the Stipulation and the settlement, shall be stayed,

20  including any attempt to enforce the trial court's judgment in the Section 1601 Action.

21      4.7     Pending the Court's determination of whether to approve the Stipulation,

22  the Derivative Plaintiffs, Oracle, and any Current Oracle Shareholder shall not commence,

23  maintain, or prosecute against the Defendants or the other Released Persons, or any of them, any

24  action or proceeding in any court or tribunal asserting any of the Released Claims.

25      4.8     For the avoidance of doubt, nothing herein or in Paragraphs 1.13 and 1.14

26  defining Released Claims and Released Persons, shall act to bar or release claims based on future

27  conduct of the Released Persons, including any conduct of the Released Persons after the date of

28

16

1    execution of this Stipulation, except to the extent the future conduct is part of continuing conduct

2    and based on the same factual predicate as that underlying the claims in the Derivative Actions.

3        **5.        The Section 1601 Action**

4            5.1      Upon execution of the Stipulation, the parties in the Section 1601 Action,

5    each of whom is also a party to the Stipulation, shall cooperate in good faith to obtain a stay of all

6    proceedings in the Section 1601 Action until entry of the Judgment, or an extension of all

7    deadlines to entry of the Judgment.

8            5.2      Upon entry of the Judgment by the Court, the parties in the Section 1601

9    Action shall promptly file a stipulated motion with the California Court of Appeal requesting that

10   it dismiss the appeal of the trial court's judgment and remand the matter to the trial court with

11   directions to vacate the judgment.

12           5.3      The parties in the Section 1601 Action agree that no further efforts will be

13   made to enforce the trial court's judgment in that action, including for recovery of costs of suit

14   and attorneys' fees and expenses.

15           5.4      Notwithstanding the provisions of this Section 5, pending the entry of an

16   order by the trial court in the Section 1601 Action vacating its judgment, the parties in the

17   Section 1601 Action may file any papers and engage in any other activities in the trial court and

18   Court of Appeal necessary to preserve their rights, including by complying with any deadlines in

19   the California Court of Appeal which the parties are unable to stay or extend.

20           5.5      If the California Court of Appeal in the Section 1601 Action does not

21   remand the matter with directions to vacate the judgment within thirty (30) calendar days of the

22   filing of the stipulated motion, or if the trial court does not vacate its judgment, the Defendants

23   may (solely at their discretion) withdraw from and terminate the Stipulation upon written notice

24   to Derivative Plaintiffs' Counsel, which notice shall be given within thirty (30) days after the

25   California Court of Appeal's failure to remand the matter with directions to vacate the judgment,

26   or the trial court's failure to vacate its judgment.

27

28

1

**6.      Attorneys' Fees and Reimbursement of Expenses of Derivative Plaintiffs'
Counsel**

2

3          6.1      If the Court enters the Judgment approving the Stipulation and the trial

4   court's judgment in the Section 1601 Action is vacated, Oracle agrees, subject to Court approval,

5   to pay or cause the Defendants' Directors' and Officers' insurers to pay the Fee and Expense

6   Amount up to the aggregate amount of $1,900,000 (one million nine hundred thousand dollars),

7   as part of the settlement of the Derivative Actions.  Oracle shall transfer the Fee and Expense

8   Amount, as the Court approves, to an account maintained by Cotchett, Pitre & McCarthy, LLP

9   within ten business days of the date as of which the Court has entered Judgment in both

10  Derivative Actions granting final approval of this Stipulation and the trial court in the Section

11  1601 Action has vacated its judgment.  Such transfer of funds is subject to the joint and several

12  obligation of Derivative Plaintiffs' Counsel and their law firms (or their successors) to refund the

13  transferred amount, plus actual interest earned on said funds, in the event that the Judgment is

14  reversed or modified on appeal or if the Effective Date does not occur.  This refund shall be paid

15  to Oracle within five business days after written notification of such event.

16         6.2      Derivative Lead Counsel shall have responsibility for apportioning and

17  distributing the Fee and Expense Amount amongst Derivative Plaintiffs' Counsel, consistent with

18  their legal and fiduciary obligations, including but not limited to any agreement amongst counsel.

19  In no event shall any of the Defendants have any obligations or liability with respect to that

20  apportionment or distribution.

21         6.3      Except as otherwise expressly provided in Section 6.1, the Settling Parties

22  shall bear their own attorneys' fees and costs incurred in connection with the matters set forth in

23  the Stipulation.

24         6.4      Except as otherwise provided in Sections 3.1 and 6.1, the Defendants shall

25  have no obligation to make any payments pursuant to this Stipulation.

26

27

28

18

**7.      Effective Date, Conditions of Settlement, and Effect of Disapproval, Cancellation, or Termination of Stipulation**

If the Stipulation is not approved by the Court, or is cancelled, or does not become effective for any reason, or if the Judgment is reversed or modified on appeal, or if the trial court's judgment in the Section 1601 Action is not vacated (as provided in Section 5), and the Defendants elect to withdraw from and terminate the Stipulation, the Settling Parties shall be restored to their respective positions in the Derivative Actions and in the Section 1601 Action as of May 21, 2013 (one day before date of Stipulation), and all negotiations, proceedings, documents prepared, and statements made in connection with the Stipulation shall be without prejudice to the Settling Parties, shall not be deemed or construed to be an admission by any Settling Party of any act, matter, or proposition, and shall not be used in any manner or for any purpose in any subsequent proceeding in the Derivative Actions, in the Section 1601 Action or appeal of the judgment therefrom, or in any other action or proceeding.  In such event, the terms and conditions of the Stipulation, with the exception of Sections 1.1-1.16, 7, and 8.3-8.13 herein, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Derivative Actions, in the Section 1601 Action or appeal of the judgment therefrom, or in any other action or proceeding, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

**8.      Other Provisions**

8.1      The Settling Parties (a) acknowledge that it is their intent to consummate the terms and conditions of the Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to obtain the Court's preliminary and final approval of the Stipulation and to accomplish the terms and conditions of the Stipulation.

8.2      The Settling Parties intend this Stipulation to be a final and complete resolution of all disputes among them with respect to the Derivative Actions.  The Stipulation compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  While retaining their right to deny that the claims

19

advanced in the Derivative Actions were meritorious, the Defendants do not dispute that the Derivative Actions and the Section 1601 Action were filed in good faith and in accordance with the applicable federal and California laws and Rules of Court, including without limitation Rule 11 of the Federal Rules of Civil Procedure and Sections 128.5, 128.6, and 128.7 of the California Code of Civil Procedure, and are being settled voluntarily after consultation with competent legal counsel.  The Judgment will contain a statement that, during the course of the Derivative Actions, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11 and California Code of Civil Procedure Sections 128.5, 128.6, and 128.7.

8.3     Neither the Stipulation nor any document referred to herein nor any action taken to carry out the Stipulation is, may be construed as, or may be used as an admission by or against the Defendants, or any of them, of any fault, wrongdoing, or liability whatsoever. Entering into or carrying out the Stipulation (or the Exhibits hereto), and any negotiations or proceedings related thereto, shall not in any event be construed as, or be deemed to be, evidence, an admission, or a concession with regard to Derivative Plaintiffs' claims or contrary to the Defendants' denials and defenses, and shall not be offered by any of the Settling Parties or received in evidence in any action or proceeding in any court, administrative agency, or other tribunal for any purpose whatsoever other than to enforce the provisions of the Stipulation (and Exhibits hereto) or the provisions of any related agreement or release; except that the Stipulation and the Exhibits hereto may be filed in the Derivative Actions, related litigation, and the Section 1601 Action as evidence of the Stipulation and its approval, or in any subsequent action against or by the Defendants or the Released Parties to support a defense of *res judicata*, collateral estoppel, release, or other theory of claim or issue preclusion or similar defense.

8.4     All agreements made and orders entered during the course of the Derivative Actions relating to the confidentiality of information, including all such agreements in the Section 1601 Action, shall survive the Stipulation.

8.5     The Exhibits to the Stipulation are a material and integral part hereof and are fully incorporated herein by reference.

20

8.6     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.7     The Stipulation and the Exhibits attached hereto constitute the entire agreement among the Settling Parties, and no representations, warranties, or covenants have been made to any party concerning the Stipulation or its Exhibits, other than the representations, warranties, and covenants contained and memorialized in such documents.   The Stipulation supersedes and replaces any prior or contemporaneous writing, statement, or understanding pertaining to the Derivative Actions or the Section 1601 Action.   Except as otherwise provided herein, all parties shall bear their own costs.

8.8     Counsel for the Settling Parties are expressly authorized by their respective clients to take all appropriate actions required or permitted to be taken pursuant to the Stipulation to effectuate its terms and conditions, and Derivative Plaintiffs' Counsel also are expressly authorized by the Derivative Plaintiffs to enter into any modifications or amendments to the Stipulation that Derivative Plaintiffs' Counsel deem advisable and appropriate.

8.9     Each counsel or other Person executing the Stipulation or its Exhibits on behalf of any party hereto hereby expressly warrants that such counsel or other Person has the full authority to do so.

8.10    The Stipulation shall be binding upon, and inure to the benefit of, the Settling Parties and their respective successors, assigns, heirs, spouses, marital communities, executors, administrators, and legal representatives.

8.11    The Stipulation may be executed in one or more counterparts.  All executed counterparts including facsimile counterparts and each of them shall be deemed to be one and the same instrument.   A complete set of original executed counterparts (or copies electronically transmitted pursuant to the Court's rules governing electronic filing) shall be filed with the Court by Derivative Plaintiffs' Counsel.

8.12    Without affecting the finality of the Judgment entered in accordance with the Stipulation, the Court shall retain jurisdiction with respect to implementation and enforcement

1   of the terms of the Stipulation and Judgment, and the Settling Parties submit to the jurisdiction of

2   the Court for purposes of implementing and enforcing the Stipulation and Judgment.

3           8.13    The Stipulation and the Exhibits hereto shall be considered to have been

4   negotiated, executed, and delivered, and to be wholly performed, in the State of California, and

5   the rights and obligations of the Settling Parties to the Stipulation shall be construed and enforced

6   in accordance with, and governed by, the internal, substantive laws of the State of California

7   without giving effect to that State's choice of law principles.

8           IN WITNESS WHEREOF, the Settling Parties hereto have caused the Stipulation

9   to be executed, by their duly authorized attorneys, as of May 22, 2013.

10

11  Dated:  May 22, 2013                    **COTCHETT, PITRE & MCCARTHY,**
                                            **LLP**
12                                          JOSEPH W. COTCHETT
                                            NANCY L. FINEMAN
13                                          MARK C. MOLUMPHY

14

15                                          _____
                                                    MARK C. MOLUMPHY
16
                                            San Francisco Airport Office Center
17                                          840 Malcolm Road, Ste. 200
                                            Burlingame, CA 94010
18                                          Telephone: (650) 697-6000
                                            Facsimile: (650) 697-0577
19
                                            **JERRY K. CIMMET**
20                                          Attorney at Law
                                            cimlaw@me.com
21                                          177 Bovet Road, Ste. 600
                                            San Mateo, CA 94402
22                                          Telephone: (650) 866-4700
                                            Facsimile: (650) 866-4770
23
                                            **LAW OFFICES OF JOHN M. KELSON**
24                                          JOHN M. KELSON
                                            kelsonlaw@sbcglobal.net
25                                          2000 Powell Street, Ste. 1425
                                            Emeryville, CA 94608
26                                          Telephone: (510) 465-1326
                                            Facsimile: (510) 465-0871
27
                                            *Attorneys for Plaintiffs Lisa Galaviz and*
28                                          *Philip T. Prince*

                                            22

1

2

3   Dated:  May 22, 2013                    **ROBBINS ARROYO LLP**
                                            BRIAN J. ROBBINS
4                                           KEVIN A. SEELY

5

6                                           _____
                                                      KEVIN A. SEELY
7

8                                           BRIAN J. ROBBINS
                                            brobbins@robbinsarroyo.com
                                            KEVIN A. SEELY
9                                           kseely@robbinsarroyo.com
                                            CHRISTOPHER L. WALTERS
10                                          cwalters@robbinsarroyo.com
                                            600 B Street, Suite 1900
11                                          San Diego, CA  92101
                                            Telephone:  (619) 525-3990
12                                          Facsimile:  (619) 525-3991

13                                          *Attorneys for Plaintiff Scott Ozaki*

14

15  Dated:  May 22, 2013                    **MORRISON & FOERSTER LLP**
                                            JORDAN ETH
16                                          PHILIP T. BESIROF

17                                          _____
                                                      JORDAN ETH
18                                          *Attorneys for Defendants Jeffrey S. Berg,*
                                            *H. Raymond Bingham, Michael J. Boskin,*
19                                          *Safra Catz, George H. Conrades, Lawrence J.*
                                            *Ellison, Kevin J. Fitzgerald, Hector Garcia-*
20                                          *Molina, Jeffrey O. Henley, Donald L. Lucas,*
                                            *Charles E. Phillips, Jr., Naomi O. Seligman,*
21                                          *and Oracle Corporation*

22

23                                          **ORACLE CORPORATION**
                                            DORIAN DALEY
                                            DEBORAH K. MILLER
24                                          JAMES C. MAROULIS

25                                          *ATTORNEYS FOR DEFENDANT*
                                            *ORACLE CORPORATION*
26

27

28

                                            23

Dated:  May 22, 2013

**ROBBINS ARROYO LLP**
BRIAN J. ROBBINS
KEVIN A. SEELY

_____
KEVIN A. SEELY

BRIAN J. ROBBINS
brobbins@robbinsarroyo.com
KEVIN A. SEELY
kseely@robbinsarroyo.com
CHRISTOPHER L. WALTERS
cwalters@robbinsarroyo.com
600 B Street, Suite 1900
San Diego, CA  92101
Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991

_Attorneys for Plaintiff Scott Ozaki_

Dated:  May 22, 2013

**MORRISON & FOERSTER LLP**
JORDAN ETH
PHILIP T. BESIROF

_____
JORDAN ETH

_Attorneys for Defendants Jeffrey S. Berg,
H. Raymond Bingham, Michael J. Boskin,
Safra Catz, George H. Conrades, Lawrence J.
Ellison, Kevin J. Fitzgerald, Hector Garcia-
Molina, Jeffrey O. Henley, Donald L. Lucas,
Charles E. Phillips, Jr., Naomi O. Seligman,
and Oracle Corporation_

**ORACLE CORPORATION**
DORIAN DALEY
DEBORAH K. MILLER
JAMES C. MAROULIS

_ATTORNEYS FOR DEFENDANT
ORACLE CORPORATION_

23